UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DELORIS A. FLEMING,**

    **Plaintiff,**

v.                                                                Case No. 8:13-cv-0318-T-17TBM

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**[1]

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

    The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

A.

    Plaintiff was forty-eight (48) years old at the time of her administrative hearing in March 2012. She stands 5 feet 8 inches tall and weighed 236 pounds according to administrative records. She has ten years of schooling. Plaintiff reported past work as a cashier, store manager, CNA, day laborer, and phlebotomist. Plaintiff applied for disability

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

benefits and Supplemental Security Income payments in February 2010, alleging disability as of April 1, 2008,[2] by reason of back, foot, neck, and heart problems, hepatitis C, bipolar disorder, diabetes, and a minor stroke. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (ALJ). The Plaintiff was represented at the hearing and testified on her own behalf. Plaintiff claimed that, in and after June 2009, she could not walk due to paralysis in her right leg. She also claimed that she cannot stand properly and she falls. The doctor told her it was plantar fasciitis. Plaintiff also described pain throughout her body. She stated she has had back pain since 1997, and she had a failed back surgery in 2009. She indicated that the pain in her lower back extends up to her shoulders; it is so bad that she cannot get out of bed on some days. Plaintiff also testified to severe pain in her neck and arms and limited use of her hands. She said neck surgery has been recommended. She testified she has problems with her hands "sticking" and her hip hurts at times. Plaintiff also testified that she has had strokes. The most recent one affected her right side. Plaintiff said she also has insulin-dependent diabetes, which is hard to control and causes pain in the legs and feet. She also complained of stomach problems, cramps, and pain.

Plaintiff testified she also suffers from depression and has her whole life. She stated she was molested when she was nine years old, and, more recently, she lost her son in Iraq and her husband thirty-three days later. In her view, medications help a little.

---

[2]The alleged onset date was amended at the administrative hearing to June 12, 2009, in consideration of the prior decision denying benefits. (R. 43-44).

Regarding her daily activities and physical abilities, Plaintiff testified that she has "bad days" in which she has trouble even getting out of bed. These occur more than half of the days in a month. On these days, she said she usually tries to walk a little after getting up and then goes back to bed. She described her pain as at a level ten on a bad day and at a level six on a good day. According to Plaintiff, she cannot stand for more than fifteen minutes due to back pain. When cooking, she has to sit down periodically. She can only sit for thirty minutes due to the pain. Plaintiff stated she cannot lift much and she drops things. These difficulties she attributes to severe pain in her neck and arm that affects her hands. She also stated she has problems dressing and putting on her shoes. (R. 43-68).

The ALJ next took testimony from Irvin Roth, a vocational expert (VE). After initially addressing Plaintiff's past work, he testified on a hypothetical question which assumed a person capable of light exertional work with limitations for no climbing ladders, ropes, or scaffolds; only occasionally climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and no exposure to even moderate levels of hazardous machinery and heights. In his opinion, such person could perform Plaintiff's past work as a store manager and phlebotomist. With an additional limitation for only frequent overhead reaching bilaterally, these jobs would remain available. On questioning by the representative, the VE testified that all work would be precluded assuming a limitation for sedentary work with no overhead reaching and only occasional front handling. If such person would miss work more than two days a month, the VE indicated no work would be available. (R. 69-76).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By her decision of May 17, 2012, the ALJ determined that while Plaintiff has severe impairments related to degenerative joint disease of the shoulders and the L5-S1 level, a history of disk protrusion in the cervical spine, plantar fasciitis, morbid obesity, diabetes mellitus with neurological manifestations, and hypertension, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a store manager and phlebotomist. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 21-30). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises three claims on this appeal. Thus, Plaintiff asserts the ALJ erred in: (1) the determination of a severe L5-S1 spinal impairment and in failing to properly assess her RFC for the more than twelve months that she suffered from a herniated disc requiring surgery and the subsequent recovery period; (2) evaluating the medical opinion of Dr. Molis, a nonexamining physician; and (3) failing to properly evaluate her RFC subsequent to surgery by failing to properly evaluate her impairments, symptoms, and credibility. (Doc. 14).

Plaintiff predicates her first argument by stating that there are two different and distinct time periods regarding her lumbar spine and low-back pain. The first time period is from her alleged onset date, June 12, 2009, through July 31, 2010, during which period she had difficulty ambulating and for some period used a walker to ambulate after undergoing lumbar surgery. The second period of time is from July 31, 2010, to March 21, 2012, the date of her hearing. Plaintiff argues that, during the first time period, the ALJ incorrectly assessed her L5-S1 spinal impairment as merely degenerative disc disease. She faults the ALJ for failing to recognize evidence of a severe disc protrusion, stenosis, nerve compression and herniated disc, and instead recognized only degenerative disc disease. Plaintiff also argues that the ALJ erred by finding that she retained the functional capacity to perform light work during this period. It was not until the end of that period that it was reported that she was able to ambulate independently with a cane. In her view, she was unable to do either light or sedentary work on a full-time basis through the time of her surgery and the roughly three month recovery period thereafter. (Doc. 14 at 8-11).

6

In response, the Commissioner urges that the ALJ properly evaluated Plaintiff's severe impairments and expressly noted the November 2009 MRI with findings of degenerative disc disease with central disc protrusions. The ALJ also noted post-fusion surgery comments by Plaintiff that she was pleased with her progress, and her physical examination at that time showed a well-healed scar and good positioning of the lumbar hardware. While Plaintiff identifies certain impairments not specifically mentioned, the Commissioner contends she fails to show evidence of functional limitations associated with the disc herniation, the disc protrusion, or the nerve root compression. Even if the ALJ erred in evaluating those impairments, the Commissioner contends any error was harmless because the ALJ found in Plaintiff's favor at step two. Further, the Commissioner urges the ALJ's assessment of Plaintiff's functional capacity is supported by substantial evidence. (Doc. 15 at 4-6).

Because it is unclear that the ALJ fairly reviewed and evaluated the import of the medical record prior to the November 2009 MRI and because such record calls into question Plaintiff's capacity to perform light exertional work for that period up through July 2010, I find a remand appropriate in this case.

As early as the June 2008 MRI, Plaintiff was found to have advanced degenerative disc disease at L5-S1, with disc space narrowing, dessication, prominent central disc protrusion, and a 2-3 mm forward displacement of L5 relative to S1 on a degenerative basis. *See* (R. 428). From at least April 2008 through the summer of 2010, Plaintiff treated with Professional Healthcare of Pinellas, Inc., on a monthly basis for complaints of low-back pain radiating into her legs with problems in ambulating. (R. 385-415, 428, 586-601, 604-05). By

7

these records, surgery to address the condition was discussed as early as August 2008. (R. 409). When seen that month by the orthopedic surgeon, Clinton Davis, M.D., Plaintiff claimed she could hardly stand and walk more than 100 feet. By his examination and assessment, surgery was extremely likely and recommended to address long-term relief from her pain symptoms.[3] (R. 379). A second MRI was conducted in November 2009. By that assessment there was a broad based central ligamentous disc protrusion that indented the thecal sac and caused mild displacement of the traversing S1 nerve roots with facet degeneration of L4-5 and L5-S1. (R. 358). When Plaintiff returned to Dr. Davis in January 2010, he found her markedly limited with a worsened condition. He recommended a right-sided L5-S1 discectomy and posterior lumbar interbody fusion (PLIF) procedure. (R. 376). Thereafter, in April 2010, Plaintiff underwent a spinal instrumentation and fusion procedure. (R. 439-40). When the wound became infected, Plaintiff underwent a wound debridement and irrigation procedure. (R. 457-58). While the follow-up records with Dr. Davis suggest the surgery had positive results in relieving pain, it was not until the July 30, 2010, examination when the doctor noted Plaintiff was ambulating independently with a cane. (R. 635). Previously, the doctor noted her use of a walker. (R. 540).

     A review of the decision suggests that little of this record was considered by the ALJ. For instance, the decision does not mention the June 2008 MRI. While such occurred prior to the amended onset date, I find it relevant to the ALJ's proper consideration of Plaintiff's low-

---

[3] He also noted weakness and numbness in the right leg, an antalgic gait on the right, an inability to toe or heel walk on the right, tenderness and decreased range of motion in the lumbar spine, and decreased sensibility on the right. (R. 277-79).

back condition during the period under consideration on this application. There is practically no reference at all to the treatment notes from the doctors at Pinellas Healthcare during this period of time. *See, e.g.* (R. 385-415, 428). Indeed, the ALJ begins his review of the medical record concerning Plaintiff's back with a rather perfunctory reference to the November 2009 MRI. (R. 27). There is no reference to evidence therein of displacement, albeit mild, of the S1 nerve root. Nor does the decision demonstrate a complete review and consideration of Dr. Davis's reports, which appear to support Plaintiff's pain complaints completely. It is not insignificant that his operative notes reflect a finding of a "tremendously compressed" exiting L5 nerve root. (R. 440). While I think it a fair reading of Dr. Davis's reports that he was able to bring significant pain relief to Plaintiff by July 30, 2010, Plaintiff makes a plausible showing that she was incapable of light exertional work for a one year period preceding that date.

On this record, I conclude that the ALJ erred by failing to demonstrate full and fair consideration of all record evidence. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (holding that the ALJ must consider all evidence). Because the decision does not reflect the full and fair evaluation of the medical evidence for this period of the claim, the RFC assessment for light exertional work[4] is called into question and I find the decision should be remanded for further evaluation of the whole of the record. *See Phillips v.*

---

[4]Light exertional work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.927(b).

*Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004) (providing that the ALJ must consider all relevant evidence when determining a claimant's RFC); *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) (failure to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal).

On this conclusion, I find it unnecessary to address the remaining claims in detail. I will, however, note that Plaintiff is correct that the ALJ incorrectly identifies Dr. Molis as an examining doctor.[5] (R. 28). As the record reveals, he was a nonexamining physician. (R. 627-34). The mistake is not insignificant given that the ALJ gave Dr. Molis's RFC assessment great weight. (R. 29). On remand, this nonexamining doctor's opinion shall be considered along with the opinions from treating and examining doctors in accordance with the standards applicable in this Circuit. As for the third claim, it goes without saying that the ALJ is duty-bound to consider all the medically revealed impairments. *See Gibson*, 779 F.2d at 623.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and

---

[5] On another occasion, the ALJ referred to Dr. Molis as a state agency medical consultant who formulated a physical RFC assessment. (R. 29). On this record, I cannot tell whether the ALJ recognized that Dr. Molis was a nonexamining doctor.

Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

                                                        Respectfully submitted this
                                                        4th day of February 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record